COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| JAMES MURRAY, | § | No. 08-12-00062-CR |
| Appellant, | § | Appeal from the |
| v. | § | 384th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC#20110D03368) |
| | § | |

# **O P I N I O N**

Appellant James Murray appeals his conviction of manslaughter, TEX.PENAL CODE ANN. § 19.04 (West 2011), and accident involving death or serious bodily injury, failure to stop, render aid, or comply with § 550.023, TEX.TRANSP.CODE ANN. § 550.021 (a)(West Supp. 2013). Appellant was indicted for the following: intoxicated manslaughter (Count I); accident involving injury or death (Count II); and manslaughter (Count III). The State ultimately dismissed the charge of intoxicated manslaughter before the case was submitted to the jury. The jury assessed punishment at 10 years' on Count II and 15 years' on Count III, to be served concurrently. In four issues, Murray contends that his trial counsel rendered constitutionally ineffective assistance of counsel by failing to address prejudicial comments made by a veniremember during voir dire; failing to make constitutional and evidentiary objections to the admission of certain expert

testimony and blood evidence; and failing to properly argue the issue of causation. For the following reasons, we affirm.[1]

## BACKGROUND
### *Factual History*

On December 10, 2008 at about 2:20 a.m., Violet Menzer and two other passengers were traveling north on U.S. Highway 54 in El Paso when the vehicle they were riding in ran out of gas and stalled near the Transmountain exit ramp. Menzer exited the vehicle and helped passengers Patricia Sanchez and another women push the car down the freeway off-ramp toward the curb. Sanchez testified the hazard lights were engaged prior to the collision. As the three women pushed the car forward, Appellant exited the freeway in his truck at a speed between 86 to 88 miles per hour and rear-ended Menzer's vehicle. Forensic testing of accident data collected by his truck indicated that Appellant made no effort to stop until one-half second before colliding with the other car.

The impact severed Menzer's right leg six inches above the knee, but did not kill her instantly. Emergency personnel rendered aid to Menzer and transported her to William Beaumont Army Medical Center in Northeast El Paso, where she later died. The results of an autopsy performed by ex-El Paso County Medical Examiner Dr. Paul Shrode were not introduced into evidence at trial, but the county's testifying expert witness, interim medical examiner Dr. Juan Contin,[2] independently reviewed Dr. Shrode's autopsy report and Menzer's emergency room records. Menzer's emergency room records were admitted into evidence.

---

[1] The State argues all four of Murray's issues should be overruled due to inadequate briefing. We decline the invitation. However, we do note Appellant's five page statement of facts is devoid of any reference to the record as required by TEX.R.APP.P. 38.1(g).

[2] Dr. Shrode did not testify at trial. Dr. Contin admitted on cross-examination that the County of El Paso had fired Shrode after discovering that he had falsified documents pertaining to his credentials. We also note that Shrode's name is spelled various ways in Appellant's brief, the State's brief, and the reporter's record. In this opinion, we will use the correct spelling of Dr. Shrode.

Dr. Contin noted that a crack pipe was found in Menzer's vagina and that Menzer's toxicology analysis showed the presence of cocaine, cocaine metabolites, nicotine, caffeine, two sedatives, a blood pressure medication, and atropine used for resuscitation. Dr. Contin testified that the amount of cocaine in Menzer's body could have led to confusion, and he also conceded on cross-examination that the amount of atropine Menzer received at William Beaumont has reportedly killed other patients. However, he denied that the atropine interacted with any of the other drugs in her system, pointed out that she would not have been administered atropine but for the crash, and ultimately concluded that Menzer died of hypovolemic shock due to bleeding from her amputated leg, which sustained "massive" injury.

Appellant was also seriously injured during the collision. Police found Appellant propped up against a pillar at a nearby strip mall minutes after the crash. An officer testified that Appellant was belligerent and smelled of alcohol. He was also transported to William Beaumont Army Medical Center by ambulance. At the hospital, Officer Danny Montano witnessed Major Thomas Durhan, a registered nurse, draw Appellant's blood for blood-alcohol concentration ("BAC") testing. Officer Montano then inserted the vial of blood into a BAC test kit, sealed the kit, and placed the box in the evidence refrigerator on El Paso Police Department premises. The refrigerator is located behind a magnetically-locked door, but numerous people have access to the room and the refrigerator. Officer Luis Sarmiento later removed the sealed kid and mailed it to the Texas Department of Public Safety for testing. Jim Thomas, laboratory analyst for the Texas Department of Public Safety, unsealed the kit and tested the sample. Thomas testified that the results indicated Appellant had a BAC of 0.16 percent the night of the crash. The BAC legal limit for operating a motor vehicle in Texas is 0.08 percent. *See* TEX.PENAL CODE ANN. § 49.01(2)(B)(West 2011).

3

During jury selection, Appellant's trial counsel, questioned the venire about various topics, including whether veniremembers had any interaction with the group Mothers Against Drunk Driving ("MADD"). Several people answered affirmatively, including two veniremembers who admitted to having made financial contributions to MADD. Defense counsel then suggested that there are situations where an accident could have been unavoidable even if the drunk driver involved had been sober, and asked the venire whether anyone "fel[t] like, Well, I don't care if it was unavoidable or not, if the guy is intoxicated or if he's whatever, I'm going to go ahead and find him guilty anyway. Does anybody feel that way?" Several unidentified veniremembers replied that they could not understand how an intoxicated person involved in an accident could not have been the cause of the accident. The transcript indicates that another unidentified veniremember stated, "[y]ou shouldn't be on the road if you have been drinking." At that point, veniremember #128 interjected:

| | |
|---|---|
| VENIREMEMBER: | I cannot be fair. That's going to the question before. I cannot be fair. |
| DEFENSE COUNSEL: | Yes, you responded. Yes, sir? |
| VENIREMEMBER: | #128, . . . I don't believe that anyone who drives does not understand that they are intoxicated and therefore would have an impairment of their judgment. And I think -- and I have to say this because, Your Honor, that I feel that this cavalier attitude that we have about intoxication is the reason why 36 people died on the roads in El Paso over that last -- |

At this point, the trial judge interrupted the veniremember:

| | |
|---|---|
| THE COURT: | We appreciate your editorial on that but this is a court. Let's try to stick with the issues, . . . that we are to address on this trial. |

4

Defense counsel then continued questioning the venire, some of whom stated they would have difficulty being fair to a defendant who was involved in an accident and intoxicated. Veniremember #128 was not selected for the petit jury.

## DISCUSSION

Appellant raises four separate ineffective assistance of counsel challenges to his conviction. We address each issue in turn.

### *Standard of Review for Ineffective Assistance of Counsel*

The United States and Texas Constitutions guarantee an accused the due process right to reasonably effective assistance of counsel. *See* U.S. CONST. AMEND. VI; TEX.CONST. art. I, § 10; *Strickland v. Washington*, 466 U.S. 668, 683-86, 104 S.Ct. 2052, 2062-64, 80 L.Ed.2d 674 (1984). Reversal for ineffective assistance of counsel is required where an appellant demonstrates by a preponderance of the evidence that: (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) the appellant suffered prejudice, i.e. that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 669, 104 S.Ct. at 2055-56. "The two prongs of *Strickland* need not be analyzed in a particular order—the prejudice prong may be analyzed first and the performance prong second." *Ex parte Martinez*, 330 S.W.3d 891, 900 n.19 (Tex.Crim.App. 2011); *see also Cox v. State*, 389 S.W.3d 817, 819 (Tex.Crim.App. 2012), *citing Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069-70. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Holland v. State*, 761 S.W.2d 307, 320 (Tex.Crim.App. 1988).

In evaluating the first prong of *Strickland*, we strongly presume that counsel is

competent, that his actions "fell within the wide range of reasonable professional assistance," *Thompson v. State*, 9 S.W.3d 808, 814 (Tex.Crim.App. 1999), and that his decisions "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. The appellant may overcome this presumption if he "prove[s], by a preponderance of the evidence, that there is, in fact, no plausible professional reason for a specific act or omission." *Bone v. State*, 77 S.W.3d 828, 836 (Tex.Crim.App. 2002). Effectiveness is judged by the record as a whole and not by isolated errors. *Scheanette v. State*, 144 S.W.3d 503, 509 (Tex.Crim.App. 2004).

Evidence establishing counsel's rationale or lack thereof for any actions must be firmly founded in the record. *Landers v. State*, 110 S.W.3d 617, 622 (Tex.App.--Houston [14th Dist.] 2003, pet. ref'd). Ordinarily on direct appeal, the record is too underdeveloped to sustain the serious charge of ineffective assistance absent examination of counsel at a motion for new trial hearing. *See Bone*, 77 S.W.3d at 833; *Freeman v. State*, 125 S.W.3d 505, 506-07 (Tex.Crim.App. 2003). We will not impute incompetence onto counsel from a silent record unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App. 2005).

### *Prejudicial Comments by Venireman*

In Issue One, Appellant contends that his trial counsel rendered constitutionally ineffective assistance by (1) improperly explaining causation during voir dire, (2) failing to control veniremember #128 from commenting on the community's "cavalier attitude" leading to 36 drunk driving deaths in El Paso, and (3) failing to move for a mistrial once the comments tainted the jury pool, or, alternatively, having the comments stricken from the record. We disagree.

Appellant's trial counsel broached the topic of causation with the jury and explained it as

follows:

> Now let me -- let me ask you this -- and let's say that you have a situation where there's an accident, okay? And that it's proven that the driver of the automobile is intoxicated above the legal limit. He's driving recklessly, racing or speeding or whatever, but the evidence shows that this accident would have occurred even if there was no intoxication or no reckless speeding, racing, whatever. In other words, it's an unavoidable accident. It's going to occur no matter what.
>
> .    .    .
>
> Now, in other words, the law -- basically it boils down to -- and what you hear with all this talk we have been doing and all this stuff we have been doing, what we're talking about is we're talking about that the intoxication or the recklessness or whatever would have to be the proximate cause -- it would have to have inter incidents [sic] to the causing of the accident.
> Now, does anybody disagree with that? Does anybody feel like, Well, I don't care if it was unavoidable or not, if the guy is intoxicated or if he's whatever, I'm going to go ahead and find him guilty anyway. Does anybody feel that way?

Appellant's contention that counsel's voir dire performance proves he was unprepared for trial is not well-founded. Trial counsel adequately explained the concept to the jurors, not just in his general comments, but also in one-on-one discussions with the individual panelists. "The fact that another attorney may have pursued a different tactic at trial is insufficient to prove a claim of ineffective assistance." *Scheanette*, 144 S.W.3d at 509. Trial counsel's actions and explanations were "objectively reasonable," *Lopez v. State*, 343 S.W.3d 137, 142 (Tex.Crim.App. 2011), and did not represent a departure from "prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065.

Appellant's claims relating to veniremember #128's comments are likewise without merit. As the State notes in its brief, Appellant's counsel may have had valid strategic reasons why he did not object or move for a mistrial when veniremember #128 made his comments, including a desire to build rapport with the jury, *see Haagensen v. State*, 346 S.W.3d 758, 766

7

(Tex.App.--Texarkana 2011, no pet.) or believing he had a favorable panel. *See Johnson v. State*, No. 07-96-0059-CR, 1997 WL 175289, *4 (Tex.App.--Amarillo Apr. 9, 1997, no pet.)(not designated for publication). We must not speculate on why counsel behaved the way he did; instead, we only review affirmative evidence in the record that sheds light on counsel's decision-making processes so that we may assess competence. *Landers*, 110 S.W.3d at 622; *Goodspeed*, 187 S.W.3d at 392. Here, there is no evidence in the record showing why counsel chose not to object. As such, Appellant cannot overcome the presumption that counsel's failure to object and strike the veniremember's comment was anything but strategic. Issue One is overruled.

### *Failure to Raise Evidentiary and Constitutional Challenges*

In his second and third issues, Appellant argues that trial counsel was ineffective because he failed to preserve evidentiary error and assert Confrontation Clause challenges under *Bullcoming v. New Mexico*, ___ U.S. ___, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), to two pieces of forensic evidence.

In Issue Two, Appellant contends that counsel should have objected under *Bullcoming* to the admission of Dr. Juan Contin's testimony because Dr. Contin relied heavily on an autopsy report prepared and certified by ex-El Paso County Medical Examiner Dr. Paul Shrode. Dr. Contin testified on cross-examination that he had read that El Paso County fired Dr. Shrode after discovering that he falsified records.[3] Appellant maintains that under *Bullcoming*, he had the right to cross-examine Dr. Shrode on affirmative, testimonial representations made in the autopsy report, particularly given that he called Dr. Shrode's truthfulness into question at trial.

---

[3] Dr. Shrode's dimissal was a well-known and highly-publicized event in the El Paso community, causing a "tsunami of public interest" and subsequent challenges to his qualifications in related cases before this Court. *See, e.g., In re D.J.R.*, 319 S.W.3d 759, 766 (Tex.App.--El Paso 2010, pet. denied). However, in reviewing this case, we are constrained to considering only evidence contained in the reporter's record and the clerk's record presented before us. *Id.* at 766 ("With limited exceptions not relevant here, an appellate court may not consider matters outside the appellate record.").

*See Bullcoming*, ___ U.S. at ___, 131 S.Ct. at 2715 (holding that surrogate expert testimony interpreting an unavailable forensic analyst's report does not vitiate Sixth Amendment's absolute requirement that "analysts who write reports that the prosecution introduces must be made available for confrontation even if they possess 'the scientific acumen of Mme. Curie and the veracity of Mother Teresa'"). Consequently, Appellant urges us to find that (1) counsel had a duty under the norms of professional conduct to object to Dr. Contin's testimony under *Bullcoming*[4] and (2) he rendered constitutionally ineffective assistance by failing to do so.

The State responds that failure to object to admissible evidence is not ineffective, *see Ex parte White*, 160 S.W.3d 46, 53 (Tex.Crim.App. 2004), and that Dr. Contin's testimony was admissible under *Bullcoming* because the underlying autopsy report containing Dr. Shrode's testimonial certifications was not actually admitted into evidence. *See Bullcoming*, ___ U.S. at ___, 131 S.Ct. at 2722 (Sotomayor, J., concurring opin.)(no confrontation issue where "expert witness was asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence"). We question whether all of Dr. Contin's testimony fell within the scope of permissible expert opinion, *see Wood v. State*, 299 S.W.3d 200, 213 (Tex.App.--Austin 2009, pet. ref'd)(independent expert's disclosure of testimonial facts in autopsy report violated Confrontation Clause), but decline to rule on the merits of Appellant's *Bullcoming* claims since that issue is not squarely before us. Instead, we hold that although Appellant may have had a colorable Confrontation Clause claim, there is not enough evidence in the record to rebut the presumption that counsel's failure to assert that claim was strategic. *See Miles v. State*, No. 01-11-00401-CR, 2012 WL 2357449, *3-*4 (Tex.App.--Houston [1st Dist.]

---

[4] We note that Appellant has not provided any citation to caselaw, American Bar Association standards, or any other sources suggesting that automatic objection under *Bullcoming* has become a professional norm for *Strickland* purposes. *See Strickland*, 466 U.S. at 688-89, 104 S.Ct. at 2065 (listing sources that could be used to determine "prevailing professional norms").

June 21, 2012, no pet.)(memo op., not designated for publication). As the Court of Criminal Appeals recently noted in a similar ineffective assistance of counsel case on direct appeal:

> We do not know why counsel failed to raise a Confrontation Clause objection because the record is silent on the matter. Perhaps there was no good reason, and counsel's conduct was deficient. Or perhaps the State could (and with an objection would) have brought Murphy [the author of a lab report] to the courtroom to testify, and counsel realized that cross-examining Murphy would not benefit his client. . . . Consequently, we conclude that the record fails to show deficient performance.

*Menefield v. State*, 363 S.W.3d 591, 593 (Tex.Crim.App. 2012).

Here, we likewise hold that Appellant has not met his evidentiary burden. The record in this case is underdeveloped on direct appeal and provides us with no insight as to what motivated counsel's decisions. As such, the presumption of competence governs. Issue Two is overruled.

In Issue Three, Appellant contends that trial counsel also had a constitutional duty to object to the admission of the laboratory report on his blood-alcohol concentration under *Bullcoming* where the blood draw witness was unavailable for confrontation.[5] Appellant further argues that that counsel should have objected to the report and testimony on other evidentiary grounds. The record completely belies Appellant's argument. Counsel objected to the evidence on both constitutional and evidentiary grounds. During a bench conference, trial counsel clearly complained that the blood draw was inadmissible on confrontation grounds because even though several people witnessed the procedure, the major who actually performed the draw had left the military and was unavailable for cross-examination. The judge overruled counsel's objection at the bench conference, and overruled it again when counsel re-urged it for the record after the sidebar. Even under Appellant's proposed *per se Bullcoming* objection rule, which we decline to

---

[5] In his Summary of the Argument, Appellant also contends that "[c]ounsel for defendant appellant failed to preserve…Kelley…objections to the admissibility of the blood draw evidence." However, Appellant provides no citations to *Kelley* in the body of his brief, and the entirety of his argument focuses on evidentiary and *Bullcoming* claims. To the extent Appellant raised *Kelley* claims, we find those arguments waived due to lack of adequate briefing. *See* TEX.R.APP.P. 38.1(i).

10

adopt, counsel's assistance would still be constitutionally effective.  Counsel also objected to the blood evidence on chain of custody grounds.  As such, Appellant's argument that counsel failed to lodge objections to the blood evidence is factually inaccurate and without merit.  Issue Three is overruled.

### *Lack of Preparation and Improper Opinion Testimony*

In Issue Four, Appellant reiterates his claim that his counsel rendered defective assistance because his performance as a whole shows he was generally unprepared to argue the issue of causation, and because he allowed the State to ask witnesses whether they believed Appellant could have avoided the accident.  We note that Appellant provided no citation to legal authority in this section of his brief apart from references to the law of causation found in the Texas Penal Code.  Appellant also failed to identify which witnesses purportedly gave improper opinion testimony and failed to cite portions of the record containing their testimony in his brief.  "This Court has no obligation to construct and compose [A]ppellant's issues, facts, and arguments[.]" *Busby v. State*, 253 S.W.3d 661, 673 (Tex.Crim.App. 2008).  Rather, Appellant has the obligation under the Rules of Appellate Procedure to present a brief that contains "appropriate citations to authorities and to the record."  TEX.R.APP.P. 38.1(i).  Here, we find the portion of Issue Four dealing with improper opinion evidence has been waived due to improper briefing. *See Foster v. City of El Paso*, 396 S.W.3d 244, 258 (Tex.App.--El Paso 2013, no pet.).

As for Appellant's first argument that his trial counsel "clearly showed a lack of preparation and understanding of the law" in arguing the issue of causation, we find no affirmative proof in the record to support that bare contention.  A mere difference of opinion on trial strategy and tactics is not enough to sustain an ineffective assistance of counsel action. *Scheanette*, 144 S.W.3d at 509.  We also find no evidence of outrageous errors in our

11

independent review of the record, and Appellant has failed to direct our attention to any. As such, the presumption of competence applies, and Appellant has not satisfied his burden in overcoming it. Issue Four is overruled.

We affirm the trial court's judgment.


January 29, 2014

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)