**Opinion issued September 29, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00946-CR

———————————

**JASON LEE RIGSBY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 412th Judicial District Court**
**Brazoria County, Texas**
**Trial Court Case No. 73605**

---

## MEMORANDUM OPINION

Appellant, Jason Lee Rigsby, was found guilty by a jury of the offense of

possession of a controlled substance, namely, methamphetamine, weighing less

than one gram.[1]  The trial court sentenced Appellant to two years in state jail, suspended the sentence, placed him on community supervision for five years, and assessed a $100 fine.  In one issue, Appellant contends that he was denied effective assistance of counsel at trial.

We affirm.

## Background

On April 29, 2014, around midnight, Deputies Tubbs, Davis, and Gutierrez of the Brazoria County Sheriff's Office went to a residence in Sweeny, Texas to serve a felony arrest warrant on Shane McCain.  When they arrived at the residence, the deputies split up.  Deputy Gutierrez went to the back of the residence, and Deputies Davis and Tubbs stayed in the front area of the house.  At the back of the home, Deputy Gutierrez saw a truck parked under a carport.  The passenger side door was open.  McCain was standing in front of the door near the truck's passenger side headlight.

Appellant was on the driver's side of the truck.  The driver's side door was open, and Appellant was standing behind the door in between the door and the front seat.  Deputy Gutierrez drew his service weapon and instructed the two men to put their hands up.  Initially, McCain and Appellant both raised their hands, but then, Appellant lowered his hands.  Deputy Gutierrez later testified that he did not

---

[1]      *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.115(b) (Vernon 2010).

2

know if, at that point, Appellant was reaching for a weapon or whether Appellant was putting something down. Deputy told Appellant to put his hands back up and, after a couple of seconds, Appellant complied. Deputy Gutierrez instructed McCain to place his hands on the hood of the truck.

When Deputies Davis and Tubbs heard Deputy Gutierrez yell, "Get your hands up. Get your hands up," they ran from the front of the residence to the back. Once there, the two officers saw McCain standing in front of the truck's open passenger door with his hands on the hood of the truck. They also saw Appellant standing on the driver's side behind the open door. When he first saw Appellant, Deputy Tubbs noted that Appellant did not have his hands raised despite being instructed by Deputy Gutierrez to do so.

Deputy Davis detained McCain, placing him in handcuffs. On the other side of the truck, Deputy Gutierrez directed his attention to Appellant. Deputy Gutierrez instructed Appellant to come around the open driver's door to speak to him. Appellant shut the driver's side door and approached the front of the vehicle to speak to Deputy Gutierrez. The deputy then had Appellant move to the back of the truck where he patted Appellant down. Appellant told the officers that he had borrowed the truck from his father, who owned the truck.

In addition to McCain and Appellant, the deputies encountered a woman, Ashley C., at the home. Deputy Davis was familiar with Ashley from other calls

3

he had made to the home and knew that she had a romantic relationship with McCain.

While Deputies Davis and Gutierrez detained McCain and Appellant, Deputy Tubbs walked around the area. He walked by the truck, shining his flashlight inside it. Through the truck's window, Deputy Tubbs saw a black and clear canister laying on the driver's side seat. Deputy Tubbs thought the canister looked suspicious, believing it to contain crystal meth. Deputy Tubbs called Deputy Gutierrez over to look at the canister through the window.

Deputy Gutierrez also thought that the canister contained crystal meth. Deputy Gutierrez then requested Deputy Davis, who had more narcotics experience, to look at the canister. Deputy Davis agreed that the canister appeared to contain crystal meth. The deputies seized the canister and arrested Appellant. McCain was arrested on the felony warrant. Later, laboratory testing confirmed that the canister contained methamphetamine.

In the indictment, Appellant was charged with "intentionally or knowingly possess[ing] a controlled substance listed in Penalty Group One (1), namely, methamphetamine and the amount of said controlled substance was, by aggregate weight, including any adulterants and dilutants, less than one (1) gram." At trial, Deputies Tubbs, Davis, and Gutierrez testified for the State. A chemist with the

Brazoria County Sheriff's Office Crime Lab testified that her analysis determined that the canister contained methamphetamine.

At trial, Appellant's counsel defended against the charge by raising the prospect that the methamphetamine had been in the possession of McCain and not Appellant. Counsel pointed out that the evidence showed that truck's passenger side door had been open and that McCain was standing on that side of the truck, albeit in front of the open passenger door, when the officers arrive. Counsel theorized that McCain knew that the officers were there to arrest him on a felony warrant and McCain did not want to face an additional charge of illegal drug possession. During closing argument, Appellant's counsel suggested that McCain had tossed the canister containing the methamphetamine into the truck when he saw Deputy Gutierrez enter the back yard.

> The jury charge included the following instructions:
>
> A person commits the offense of possession of a controlled substance if the person knowingly or intentionally possesses a controlled substance and the controlled substance is, by aggregate weight, including adulterants and dilutants, less than one (1) gram. Under our law, methamphetamine is a controlled substance in Penalty Group 1.
>
> . . . .
>
> "Possession" means the actual care, custody, control, or management of the controlled substance.
>
> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

5

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exists. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

The jury found Appellant guilty of possession of a controlled substance as charged in the indictment. The trial court assessed Appellant's punishment at two years' confinement, suspended the sentence, placed him on community supervision for five years, and assessed a $100 fine.

Appellant filed a motion for new trial, asserting only that the "[t]he verdict in this cause is contrary to the law and the evidence." The motion was denied by operation of law. This appeal followed.

**Ineffective Assistance of Counsel**

In his sole appellate issue, Appellant contends that he received ineffective assistance of counsel during the guilt-innocence phase of trial.

**A. Applicable Legal Principles**

To prevail on a claim of ineffective assistance of counsel, an appellant must show the following: (1) counsel's performance fell below an objective standard of reasonableness and (2) a reasonable probability exists that, but for counsel's errors, the result would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); *Lopez v. State*, 343 S.W.3d 137,

6

142 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006).

Appellant has the burden to establish both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956–57 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

### B. Analysis

#### 1. Objecting to Hearsay Testimony

Appellant asserts that his counsel's performance at trial was deficient because she did not object to certain hearsay statements elicited by the State during its examination of Deputies Gutierrez, Tubbs, and Davis. In particular, Appellant claims that trial counsel should have objected to testimony by Deputy Gutierrez in which the officer stated, "I learned [from Ashley] that the crystal meth was [Appellant's] and they had consumed it prior to our arrival." Appellant also

7

complains that counsel should have objected to Deputy Davis's testimony that "I learned from Shane McCain on scene that the methamphetamine belonged to [Appellant]" and to his statement that "I learned from Ashley [C.] that she didn't know whose methamphetamine it was [but] that [Appellant] had given her methamphetamine to use just prior to our arrival." Appellant further complains that his counsel should have objected to Deputy Tubbs's testimony that "I believe I learned from Deputy Davis that he received information from Shane McCain that that [the meth] was in fact [Appellant's]" and to his statement that "I believe [Ashley] said [Appellant] was in possession of [the meth] or he had given her some before our arrival."

Even if we presume that he has satisfied the first *Strickland* prong by showing that counsel's performance fell below an objective standard of reasonableness, Appellant does not meet his burden under the second *Strickland* prong. More precisely, Appellant has not shown that there is a reasonable probability that the result of the proceeding would have been different had counsel successfully challenged the complained-of hearsay testimony.

A person commits an offense if he knowingly or intentionally possesses less than one gram of methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.115(b) (Vernon 2010). To prove possession, the State must show the accused (1) exercised control, management, or care over the contraband

8

and (2) knew the substance possessed was contraband. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see also* TEX. PENAL CODE ANN. § 1.07(a)(39) (Vernon 2011) (defining "[p]ossession" as "actual care, custody, control, or management"). Possession may be proved through either direct or circumstantial evidence. *Poindexter v. State*, 153 S.W.3d 402, 405–406 (Tex. Crim. App. 2005); *see also Rice v. State*, 195 S.W.3d 876, 881 (Tex. App.—Dallas 2006, pet. ref'd) (stating jury could infer knowing or intentional possession of contraband).

At trial, in addition to the complained-of testimony, the State's evidence showed the following:

- The canister, later confirmed to contain methamphetamine, was sitting in plain view on the truck's driver's side seat.

- Appellant stated that he had borrowed the truck from his father, who owned the vehicle.

- When the deputies arrived, Appellant was standing behind the truck's open driver's side door in front of the driver's seat.

- The canister was within Appellant's arms reach and was not within the reach of McCain.

- Although the passenger side door was open, McCain was standing in front of the truck's passenger side door, near the front of the truck when Deputy Gutierrez first encountered the two men.

- Appellant lowered his hands after being told to raise his hands by Deputy Gutierrez.

- When Appellant lowered his hands, the deputies could not see whether Appellant was discarding something or grabbing a weapon.

9

The complained-of testimony aside, the foregoing evidence was more than sufficient to support jury's guilty verdict. From the evidence, the jury could have reasonably inferred that Appellant knowingly or intentionally possessed the methamphetamine; that is, that Appellant knowingly or intentionally exercised actual control, management, or care of the methamphetamine.

We also note that, during closing argument, Appellant's counsel cited the complained-of testimony to support the defensive theory that Appellant did not knowingly or intentionally possess the drugs because it was likely McCain who had tossed the drugs into the driver's seat of the truck. In this regard, Appellant's counsel asserted that McCain's and Ashley's statements to police, indicating that Appellant owned the drugs, were consistent with the defense's theory that McCain was attempting to distance himself from the drugs to avoid an additional felony charge. And, during its closing statement, the State remarked that the reason it had not called McCain or Ashley to testify was because McCain, a felon, and Ashley, an admitted drug user, were not credible witnesses. Thus, any effect that the hearsay testimony may have had on the jury was minimized by both sides' closing arguments.

Given the evidence, we conclude Appellant has not shown that there is a reasonable probability that but for his counsel's alleged deficient performance of failing to object to the complained-of hearsay testimony, the outcome of the

10

proceeding would have been different. *See Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). Thus, we hold that Appellant has failed to satisfy the second *Strickland* prong with regard to this complaint. *See Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012).

## 2. *Failure to Object to Comments on Weight of the Evidence and Legal Conclusions*

Appellant also complains that his trial counsel's performance at trial was deficient because she failed to object to certain testimony on grounds that the testimony was a comment on the weight of the evidence or constituted an improper legal opinion. Specially, Appellant asserts that his trial counsel should have objected to the following:

- Deputy Tubbs' testimony that Appellant was "in possession" of the methamphetamine because "[h]is dad let him borrow the truck that night," thereby making Appellant "responsible for everything inside that truck at that time."

- Deputy Gutierrez's testimony, indicating that possession is determined by showing that a person has "care, custody, and control of an illegal narcotic or object."

- Deputy Gutierrez's testimony that Appellant was "in possession" of the drugs for the following reason: "It was his truck. Well, he said it was —the truck is registered in his father's name, but he was driving the truck."

- With respect to what constitutes "possession, the following testimony of Deputy Davis: "Possession—you don't have to literally be holding something to be in possession of it. If you're driving a vehicle and you're stopped and they find narcotics in your trunk where you can't

11

even access it, you're in possession of it because you're in care, custody, and control of that vehicle."

Even if we presume that Appellant's counsel was deficient because she did not object to the above testimony, Appellant again has not satisfied the second *Strickland* prong. More precisely, Appellant has not shown that there is a reasonable probability that the result of the proceeding would have been different had counsel successfully challenged the complained-of testimony.

Appellant asserts that the complained-of testimony left "the jury with an improper definition of possession of a controlled substance and an improper opinion of Appellant's guilt . . . ." Appellant further asserts that the testimony incorrectly led the jury to believe that Appellant could be found guilty by showing only that he possessed the drugs when the law requires that there also be a showing of knowledge or intent with regard to the possession. *See* HEALTH & SAFETY § 481.115(b). We note, however, that the charge instructed the jury that "[a] person commits the offense of possession of a controlled substance if the person knowingly or intentionally possesses a controlled substance." Thus, the jury was informed that, to find Appellant guilty, the evidence had to show that he knowingly or intentionally possessed the methamphetamines. The charge also provided the jury with the statutory definition of "possession." *See* PENAL § 1.07(a)(39). The charge further instructed the jury on the burden of proof, providing,

> The State must prove every element of the offense charged beyond a reasonable doubt. The burden of proof throughout the trial is always on the State. The defendant does not have to prove anything. If the State proves every element of the offense beyond a reasonable doubt, then you must find the defendant guilty. If the State does not prove every element of the offense beyond a reasonable doubt, then you must find the defendant not guilty.

Given the record, we conclude Appellant has not shown that there is a reasonable probability that but for his counsel's alleged deficient performance in failing to object on the grounds that the testimony was a comment on the weight of the evidence or constituted an improper legal opinion, the outcome of the proceeding would have been different. *See Andrews*, 159 S.W.3d at 102. Thus, we hold that Appellant has failed to satisfy the second *Strickland* prong with regard to this complaint. *See Cox*, 389 S.W.3d at 819.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

13